UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRIAN PRUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-11917-KAR |
| | ) | |
| TOWN OF WALES, WALES BUILDING | ) | |
| DEPARTMENT, WALES CONSERVATION | ) | |
| COMMISSION, WILLIAM CANTELL & | ) | |
| NORMA THOMPSON, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT & PLAINTIFF'S MOTION FOR SUMMARY OR PARTIAL
SUMMARY JUDGMENT
(Dkt. Nos. 34 & 37)

ROBERTSON, U.S.M.J.

Brian Prucker (Plaintiff), a lawyer who is self-represented in this litigation, alleges that

the Town of Wales (Wales), the Wales Building Department, the Wales Conservation

Commission, William Cantell, and Norma Thompson (collectively, Defendants), improperly

interfered with his construction of a shed on property he bought that abutted Lake George in

Wales.  Plaintiff seeks review in the nature of certiorari under Mass. Gen. Laws ch. 249, § 4

(Count I), and claims that Defendants were negligent (Count II), and that William Cantell, the

building inspector, and Norma Thompson, the Conservation Commission chairperson, violated

42 U.S.C. § 1983 (Counts III & IV).  Currently before the court is Plaintiff's motion for partial

summary judgment on Count I, a state law claim that seeks certiorari review (Dkt. No. 37).[1]

---

[1] *See Messere v. Clarke,* C.A. Nos. 11-12166-MLW, 11-11705-MLW, 2013 WL 3289104, at *2
(D. Mass. June 27, 2013) (treating a claim brought pursuant to Mass. Gen. Laws ch. 249, § 4
claim as a state law claim); *Anderson v. Chamberlain,* 134 F. Supp. 2d 156, 159 (D. Mass. 2001)

Defendants have moved for summary judgment on all counts of the complaint.  The parties have consented to this court's jurisdiction (Dkt. Nos. 9, 17).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons that follow, the court ALLOWS Defendants' motion for summary judgment as to the federal claims in Counts III and IV and declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  The court DENIES Plaintiff's motion for partial summary judgment as to Count I without prejudice.

I.    FACTS[2]

For purposes of ruling on Defendants' summary judgment motion, the evidence is viewed in the light most favorable to Plaintiff, the nonmoving party.  *See Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 820 (1st Cir. 1991).  On or about December 19, 2019, Plaintiff and Defendant Cantell, the Wales Building Inspector, discussed the foundation requirements for a 600 square foot storage shed that Plaintiff wanted to build on property that he planned to purchase at 6 Laurel

---

(a claim under Mass. Gen. Laws ch. 249, § 4 seeking to require a state board to comply with state law was "unquestionably a state law claim.").

[2] Unless another source is cited, the facts are drawn from Plaintiff's Statement of the Facts (PSOF) (Dkt. No. 37), Defendants' Response to Plaintiff's Statement of the Facts (Def. Resp.) (Dkt. No. 40), Defendants' Statement of Undisputed Material Facts (DSOF) (Dkt. No. 36), Defendants' Supplemental Facts (DSF) (Dkt. No. 41), and Plaintiff's Counter Statement of Material Facts (Pl. Resp.) (Dkt. No. 38).  Plaintiff's counter statement disputed 11 of Defendants' 67 undisputed facts.  "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2); *see also* LR, D. Mass. 56.1.  The court deems admitted facts set forth in Defendants' undisputed facts where Plaintiff has not controverted those facts.  Further, in violation of Local Rule 56.1, Plaintiff's memoranda set forth additional facts that are not included in his statement of facts or his responses to Defendants' statements of facts.  "The court will not consider any facts included in plaintiff['s] opposition but not in [his] statement of … facts for purposes of summary judgment."  *Alves v. City of Gloucester*, 594 F. Supp. 3d 315, 320 (D. Mass. 2022) (citing LR, D. Mass. 56.1; *Schultz v. Kelly*, 188 F. Supp. 2d 38, 49-50 (D. Mass. 2002)).

Lane in Wales (DSF ¶¶ 3, 7, 8, 9).  Plaintiff purchased the property at 6 Laurel Lane on January 3, 2020 (DSF ¶ 7).

          1.     The Building Permit.

On January 7, 2020, Plaintiff met Cantell to request a building permit for the accessory building (DSF ¶10; PSOF ¶ 1; Def. Resp. ¶ 1).  Plaintiff and Cantell discussed several potential locations for the shed and its crushed stone pad foundation.  Plaintiff presented Cantell with a map of 6 Laurel Lane showing the proposed locations (DSF ¶¶ 11, 12).  Cantell did not advise Plaintiff about the 100-foot restricted buffer zone around Lake George (DSOF ¶ 22 & n.2).

Cantell issued an unsigned building permit for the accessory building that night (DSF ¶ 13; PSOF ¶ 2; Def. Resp. ¶ 2).[3]  The building permit stated:

> The person accepting this permit shall in every respect conform to the terms of the application on file in this office, and to the provisions of the Statutes and Ordinances relating to the Construction, Maintenance and Inspection of buildings in the Town of Wales and shall begin work on said building within 180 days from the date hereof and prosecute the work thereon to a speedy completion, not to exceed 2 years.
> > Any violation of any of the terms above noted is an immediate revocation of this permit.

(Dkt. No. 37-1 at 1).  Plaintiff signed a Homeowner Warning Notice, which advised that building permit applicants were responsible for seeing that all work met the state and local building codes and the town's zoning by-laws and that it was "not the responsibility of the Building Department to quote, give explanations or advice on, or about, Massachusetts Building Code.  It [is the homeowner's] responsibility to understand and follow all codes" (DSF ¶¶ 15, 17; Dkt. No. 41-6 at 2).  Wales' Zoning By-law § 3.0.4.1 required all development, including structural activities, to comply with the Massachusetts Wetlands Protection Act (WPA), Mass. Gen. Laws ch. 131, §

---

[3] Cantell signed Plaintiff's application form (Dkt. No. 41-17 at 2).

40, and the Massachusetts Wetlands Protection Regulations (310 C.M.R. § 10.00 et seq.) (DSF ¶ 16).  Cantell told Plaintiff that Plaintiff was responsible to know and understand the building code and the laws concerning the application process and that he would have to appear before the Conservation Commission if his building was within 100 feet of the lake (DSF ¶¶ 18, 19).  Cantell also told Plaintiff that he could put the accessory building anywhere on his property (Pl. Resp. ¶ 24).

        2.      The Building Inspector's Cease and Desist Order.

Between January 3, 2020, when Plaintiff purchased the property, and May 12, 2020, Plaintiff and his nephews removed several trees and logs that were felled by beavers (DSF ¶ 21).  On May 12, 2020, Plaintiff's builders began erecting the shed (DSF ¶ 22).  While on an inspection of property on Point Grove Road at approximately 11:00 A.M., Cantell drove past 6 Laurel Lane and observed a 20' x 30' crushed stone pad that was laid to level the ground in a location that was different from the potential sites that Plaintiff had identified and Cantell had approved during their January 7, 2020 discussion of the building permit (DSF ¶¶ 23, 24, 27; PSOF ¶¶ 3, 4; Def. Resp. ¶ 3; Dkt. No. 38-4 at 2 ¶ 18).  Believing that the accessory building violated the WPA and its regulations that prohibited building in the buffer zone within 100 feet of a waterway, Cantell used a tape measure to determine that the distance between the structure and Lake George was less than 100 feet (DSF ¶¶ 24, 26, 28).  Cantell also observed that the waterline had been disturbed by the removal of brush and trees (DSF ¶ 29).

After Cantell ordered Plaintiff's contractors to stop working and informed them of the reason for the cease-and-desist order, he went to the town hall to get a cease-and-desist card.  He returned to the construction site and posted the card on the building materials (DSF ¶¶ 30, 31).  Plaintiff was not present at the site during Cantell's visits on May 12, 2020 (PSOF ¶ 5; Def.

Resp. ¶ 5).  Cantell sent Plaintiff a letter the next day to inform him that he issued the cease-and-

desist order because the structure was located within the 100 foot wetland protection buffer zone

in violation of Massachusetts law.  Cantell noted that although Plaintiff's plot plan showed that

the building would be located more than 100 feet from the lake, it was being constructed 53 feet

from the water's edge.  Cantell advised Plaintiff to contact the Wales Conservation Commission

before performing any additional work at the site (DSF ¶¶ 32, 33; Dkt. No. 37-1 at 3).

On May 26, 2020, Cantell sent an e-mail message to the Conservation Commission,

notifying the commission of the cease-and-desist order.  Cantell stated that he issued a building

permit for a 600 square foot structure outside of the 100-foot buffer zone for Lake George, but

there was construction within the buffer zone and "much excavation" work had been done "right

up to the water line" (Dkt. No. 37-1 at 4).  Plaintiff did not receive a copy of Cantell's e-mail

message (PSOF ¶ 10; Def. Resp. ¶ 10).

### 3.   The Conservation Commission's Actions

On May 26, 2020, Thompson, then Chairperson and Clerk of the Conservation

Commission, informed Cantell that she "took a ride" to Plaintiff's site and "there [did not] seem

to be any work going on," but she had not received anything from Plaintiff (DSF ¶ 5; Dkt. No.

37-1 at 4).

Plaintiff first heard from the Conservation Commission on July 1, 2020, when Thompson

called and asked whether he had requested a hearing before the commission (DSOF ¶ 41; DSF ¶

36).  Plaintiff indicated that he had submitted a request for a hearing on May 21, 2020 (DSOF ¶

40; PSOF ¶ 11; Def. Resp. ¶ 11).  Because Thompson had not received his letter, she sent him an

application to Request a Determination of Applicability (RDA) (DSF ¶ 37; PSOF ¶ 14; Def.

Resp. ¶ 14).  Plaintiff completed the application and sent it to the Conservation Commission

along with pictures of the area, a map, and a drawing (DSF ¶ 38).  On or around July 14, 2020, Thompson informed Plaintiff that she had lost some of the materials he had submitted and requested copies.  Plaintiff resubmitted them (DSF ¶ 40; PSOF ¶ 16; Def. Resp. ¶ 16).

On July 1, 2020, Plaintiff gave the members of the Conservation Commission written permission to inspect his property at 6 Laurel Lane "at any time convenient to them without [Plaintiff] being present" (DSF ¶ 39; Dkt. No. 41-10 at 2).  When Thompson and the other two members of the commission inspected the property in July, they observed some freshly cut trees, a big stone pad in the area where all the plant life had been either buried or removed, and the absence of protection for the lake (DSF ¶¶ 41, 42).  The commission did not document its inspection (Pl. Resp. ¶ 47).

On July 20, 2020, Thompson sent the town clerk a notice of the Conservation Commission's public hearing to be held on Thursday, July 23, 2020 at 6:00 P.M. via Zoom.  The notice was posted on the town's website at 7:39 P.M. (DSF ¶ 43; PSOF ¶ 18; Def. Resp. ¶ 18).  The agenda for the meeting included as topics Plaintiff's property address and "construct storage building" (DSF ¶ 45; Dkt. No. 41-11 at 2).  Plaintiff stopped regularly checking the town's website after Thompson told him she did not think there would be a July meeting because she was going on vacation and a notice about his RDA needed to be published five days before the public hearing (DSF ¶ 46; Pl. Resp. ¶ 52; PSOF ¶ 17).

Plaintiff was unaware of the Conservation Commission's July 23, 2020 public meeting and did not attend (DSF ¶¶ 46, 47, 48; PSOF ¶ 19; Def. Resp. ¶ 19).  After discussing their site visit to Plaintiff's property, the commission members decided to issue an enforcement order against Plaintiff based on their observations (DSF ¶ 49).  The enforcement order stated that Plaintiff was conducting activity within an area protected by the WPA or within the buffer zone

without the commission's approval (DSF ¶ 50). The Conservation Commission directed Plaintiff to cease and desist from any activity affecting the buffer zone and identified required remedial measures (DSF ¶¶ 51-52; Dkt. No. 41-13 at 2-5).  Plaintiff was directed to appear at the next Conservation Commission meeting on August 27, 2020 (DSF ¶ 53).

On July 29, 2020, Thompson notified Plaintiff that he missed the July 23rd Conservation Commission meeting (DSF ¶ 54).  Plaintiff received the details of the enforcement order by certified mail on August 13, 2020 (DSF ¶ 55; PSOF ¶ 20; Def. Resp. ¶ 20).  Plaintiff notified the town that he was going to file a lawsuit, requested that the Conservation Commission hold all matters in abeyance pending the court's decision, and sought the recusal of the commission members who were involved in his case (DSF ¶ 57; Dkt. No. 42-6 at 7-12).  In response to Plaintiff's request, the Conservation Commission did not ratify the enforcement order (DSF ¶ 57).

4.  Aftermath

On September 17, 2020, Plaintiff filed a complaint in the Superior Court Department of the Massachusetts Trial Court (PSOF ¶ 21; Def. Resp. ¶ 21) challenging Defendants' actions (Dkt. No. 15-1).  Defendants removed the case to this court (Dkt. No. 1).  After Plaintiff filed suit, he installed a separate stone pad and built the accessory building on one of the locations that Cantell had approved on January 7, 2020 (DSF ¶ 59).  The original stone pad was not removed and remains in the buffer zone (DSF ¶ 61).

II.  STANDARD OF REVIEW

The purpose of summary judgment is "'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (citation omitted).  "Summary judgment is appropriate when, based on the

pleadings, discovery, and disclosure materials in the record, 'there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Ruggiero v. Am. United Life Ins. Co.*, 137 F. Supp. 3d 104, 111 (D. Mass. 2015) (quoting Fed. R. Civ. P. 56(a), (c)). "A 'genuine' dispute is one that, based on the supporting evidence, 'a reasonable jury could resolve . . . in favor of the nonmoving party,' and a 'material' fact is one that has 'the potential to affect the outcome of the suit under the applicable law.'" *Id.* at 111-12 (alteration in original) (quoting *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996) (citations and quotation marks omitted)).

"If the moving party satisfies the burden of showing, based on evidentiary material, that there is no genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate by reference to specific provable facts 'that a reasonable jury could return a verdict for the nonmoving party.'" *Ruggiero,* 137 F. Supp. 3d at 112 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "[C]onclusory allegations, improbable inferences, and unsupported speculation" are insufficient to establish a genuine dispute of material fact. *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

III.   ANALYSIS

A.   Federal Claims Under 42 U.S.C. § 1983 (Counts III and IV)

"A claim under section 1983 has two essential elements: (1) the conduct complained of must have been committed under color of state law, and (2) the conduct must have worked a denial of rights that are protected by the Constitution or laws of the United States." *Gueits-Colón v. De Jesús*, 177 F. Supp. 2d 128, 134 (D.P.R. 2001) (citing *Martinez v. Colon,* 54 F.3d 980, 984 (1st Cir. 1995)). There is no dispute that Cantell and Thompson, against whom

Plaintiff asserts claims under 42 U.S.C. § 1983 (Section 1983), were acting under color of state

law at all relevant times.  As to the second element, Plaintiff alleges that Cantell and Thompson

violated his right to substantive and procedural due process and that Thompson violated his

Fourth Amendment rights by entering onto his property without permission (Dkt. No. 15-1).

       1.     Substantive and Procedural Due Process

"The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving

any person of 'life, liberty, or property, without due process of law.'" *Harron v. Town of*

*Franklin*, 660 F.3d 531, 535 (1st Cir. 2011) (quoting U.S. Const. amend. XIV, § 1). "This

prohibition guards against 'the arbitrary exercise of the powers of government.'" *Id.*

(quoting *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998)).  "The Due Process Clause has

both procedural and substantive components." *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir.

2005).  "Where, as here, a plaintiff's substantive due process claims challenge the

constitutionality of certain executive acts, 'the plaintiff must show *both* that the acts were so

egregious as to shock the conscience *and* that they deprived him of a protected interest in life,

liberty, or property.'" *Harron,* 660 F.3d at 536 (quoting *Pagán v. Calderón,* 448 F.3d 16, 32 (1st

Cir. 2006)).

> "There is no scientifically precise formula for determining whether executive
> action is – or is not – sufficiently shocking to trigger the protections of the
> substantive due process branch of the Fourteenth Amendment." *Pagán,* 448 F.3d
> at 32.  However, certain principles have emerged from the case law.  Executive
> acts that shock the conscience must be "truly outrageous, uncivilized, and
> intolerable," *Hasenfus v. LaJeunesse,* 175 F.3d 68, 72 (1st Cir. 1999), and "the
> requisite arbitrariness and caprice must be stunning, evidencing more than
> humdrum legal error," *Amsden v. Moran,* 904 F.2d 748, 754 n.5 (1st Cir. 1990).
> Indeed, "[a] hallmark of successful challenges is an extreme lack of
> proportionality, as the test is primarily concerned with violations of personal
> rights so severe[,] so disproportionate to the need presented, and so inspired by
> malice or sadism rather than a merely careless or unwise excess of zeal that it
> amounted to a brutal and inhumane abuse of official power literally shocking to
> the conscience." *González-Fuentes v. Molina,* 607 F.3d 864, 881 (1st Cir. 2010)

(internal quotation marks and ellipses omitted).

*Id*. (alterations in original).

"'[T]he substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong.'" *Mongeau v. City of Marlborough,* 492 F.3d 14, 17 (1st Cir. 2007) (quoting *Pagán,* 448 F.3d at 33). "Although the First Circuit routinely has rejected substantive due process claims in the zoning and land-use contexts, it has 'left the door slightly ajar for federal relief in truly horrendous situations.'" *Brockton Power LLC v. City of Brockton*, 948 F. Supp. 2d 48, 69 (D. Mass. 2013) (quoting *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 45 (1st Cir. 1992)).

"Procedural due process guarantees that a state proceeding which results in a deprivation of property is fair …." *Licari v. Ferruzzi*, 22 F.3d 344, 347 (1st Cir. 1994). "To avoid summary judgment on a procedural due process claim, [the plaintiff] must show [1] that [he] had a property interest defined by state law; and [2] that [D]efendants, acting under color of state law, deprived [him] of that interest without adequate process." *Id.* (second and fourth alterations in original). Adequate process requires "notice of the charges and a reasonable chance to meet them." *Amsden*, 904 F.2d at 753 (citing *Mathews v. Eldridge,* 424 U.S. 319, 348 (1976)).

  2. Massachusetts Statutory and Regulatory Framework

The Wales Zoning By-laws required all structures to comply with the Massachusetts WPA and its regulations. *See* Wales, Mass. Zoning By-law § 3.0.4.1. The WPA requires that anyone seeking to alter an area subject to the WPA's protection begin by filing a notice of intent (NOI) with the local conservation commission. *See* Mass. Gen. Laws ch. 131, § 40. The WPA's regulations instruct a landowner to file an NOI before conducting an enumerated activity within

10

100 feet of a lake, referred to as the buffer zone.  *See* 310 C.M.R. §§ 10.02(1)(a) and (2)(b),

10.05(4)(a); *see also* 310 C.M.R. § 10.04 (defining "buffer zone" as "that area of land extending

100 feet horizontally outward from the boundary of any area specified [as an area subject to

protection] in 310 C.M.R [§] 10.02(1)(a).").  Activities requiring a conservation commission's

prior approval include "any form of draining, dumping, dredging, damming, discharging,

excavating, filling or grading; the erection, reconstruction or expansion of any buildings or

structures; . . . the changing of run-off characteristics; the intercepting or diverging of ground or

surface water …; the destruction of plant life; and any other changing of the physical

characteristics of land."  310 C.M.R. § 10.04.  Altering an area subject to protection under the

WPA without the commission's prior authorization is a violation of the statute.  *See* Mass. Gen.

Laws ch. 131, § 40.  The WPA authorizes a conservation commission to issue enforcement

orders directing compliance with the WPA and its regulations.  *See id.*; 310 C.M.R. § 10.08(1).

       3.       Cantell did not violate Plaintiff's right to substantive or procedural due
                   process (Count III).

       a.      *Substantive Due Process*

Plaintiff alleges that Cantell retaliated against him for refusing to hire Cantell to build his

shed by telling Plaintiff that he could erect the shed anywhere on his property, issuing a building

permit that did not provide notice of any restrictions, and then ordering Plaintiff's contractors to

cease and desist work on the morning construction began (Dkt. No. 38 at 7).  Assuming these

allegations to be true, Plaintiff still has not established that Cantell's acts were a brutal and

inhumane abuse of power.

    Even if Cantell failed to inform Plaintiff that he could not erect the shed in the buffer

zone, the building permit and the Homeowner Warning Notice, which Plaintiff signed on

January 7, 2020, notified Plaintiff that the building must conform to the application on file and

governing laws, regulations, and by-laws, including the WPA (Dkt. No. 37-1 at 1; Dkt. No. 41-6).  There is no dispute that Plaintiff failed to comply with the representations he made on the proposed site map that he submitted to obtain the building permit from Cantell when he placed the crushed stone pad within the lake's 100-foot buffer zone.  Further, there is no dispute that Plaintiff violated the WPA and its regulations by building the stone pad within the buffer zone without first filing an NOI with the conservation commission.  *See* Mass. Gen. Laws ch. 131, § 40; 310 C.M.R. §§ 10.02(1)(a) and (2)(b); 10.05(4)(a).  Even if, as Plaintiff contends, Cantell issued the cease-and-desist order because Plaintiff selected a contractor other than Cantell to build his shed, that act would not shock the conscience where Cantell's order required Plaintiff to stop unlawful activity.  *See Collins v. Nuzzo,* 244 F.3d 246, 251 (1st Cir. 2001) (a licensing board member's personal animus toward the plaintiff did not satisfy the shock-the-conscience test); *Licari,* 22 F.3d at 347-48 (no substantive due process violation where the building inspector, at the planning board's behest, revoked plaintiff's building permit for failing to comply with the representations in the site plan that supported the special permit application).  An order requiring a landowner to comply with the law, even if motivated by an improper purpose, is not the truly horrendous situation that would warrant federal relief.  *See Brockton Power LLC*, 948 F. Supp. 2d at 69.

    b. *Procedural due process*

   Plaintiff argues that Cantell did not provide him with the process due to him when Cantell did not deliver the cease-and-desist order to him personally (Dkt. No. 38 at 1-2).  Defendants contend that this argument fails as a matter of law because Plaintiff had no property interest in the personal delivery of the order, and, even if he had identified a constitutionally protected property interest, which he has not, Plaintiff has not shown that Cantell was required to

deliver the cease and desist order to him personally or that he was otherwise deprived of his

rights by Cantell's process for issuing the cease-and-desist order (Dkt. No. 39 at 10-12; Dkt. No.

43 at 2-3).

Assuming for the sake of argument that Plaintiff enjoyed a property interest in personal

delivery of the building permit that Cantell issued, *see Chongris v. Board of Appeals,* 811 F.3d

36, 40 (1st Cir. 1987), and that Cantell deprived him of that interest when he issued the cease-

and-desist order, Plaintiff has not shown that he was deprived of notice and a meaningful

opportunity to be heard.  As to notice, Cantell's May 13, 2020 letter to Plaintiff explained that the

order was issued "for work being done within the 100' wet land protection buffer zone" of the

lake and because the shed was not located on one of the proposed sites on the plot plan that

Plaintiff presented to support his application for a building permit (Dkt. No. 37-1 at 3).  In

addition, Cantell indicated that he posted the cease-and-desist order card on the building

materials on May 12, 2020 (DSF ¶ 31).  The July 3, 2020 photographs show that the cease-and-

desist order was visible on the building materials that were stored at the site (Dkt. Nos. 43-1 at 2

and 43-2 at 2).  Plaintiff has cited no authority, and the court is not aware of any, that supports

Plaintiff's argument that Cantell was required to serve Plaintiff with a copy of the cease-and-

desist order by "personal presentment, service of process or certified mail" (Dkt. No. 37 at 6;

Dkt. No. 38 at 3-4).

Furthermore, Massachusetts law provided a post-deprivation opportunity for Plaintiff to

challenge the issuance of the cease-and-desist order.  Thus, even if Cantell should have delivered

the cease-and-desist notice to Plaintiff in person (and, so far as the court is aware, there was no

such requirement), Cantell did not violate Plaintiff's right to procedural due process.  "With

respect to procedural due process, 'if a state provides adequate postdeprivation remedies – either

by statute or through the common-law tort remedies available in its courts – no claim of a violation of procedural due process can be brought under § 1983 against the state officials whose random and unauthorized conduct occasioned the deprivation.'" *Ryan v. Demaria*, Civil Action No. 21-11158-NMG, 2022 WL 2400052, at *10 (D. Mass. Jan. 25, 2022), *adopted* (Mar. 3, 2022), *appeal docketed,* No. 22-1513 (1st Cir. July 5, 2022) (quoting *Lowe v. Scott*, 959 F.2d 323, 340 (1st Cir. 1992) (citations omitted)). *See Licari*, 22 F.3d at 348.

The placement of Plaintiff's shed violated the WPA's buffer zone restriction and the town by-law that required compliance with the WPA. *See* Mass. Gen. Laws ch. 131 § 40; Wales, Mass. Zoning By-law § 3.0.4.1. The zoning by-laws authorized Cantell as the building inspector to issue a cease-and-desist order for structural work that violated the Wales by-laws. *See* Wales, Mass. Zoning By-laws § 8.0.3. Plaintiff had a post-deprivation remedy for challenging the cease-and-desist order: he could have appealed Cantell's order to the Wales Zoning Board of Appeals. *See* Wales, Mass. Zoning By-laws § 8.2.3.2; *see also* Mass. Gen. Laws ch. 40A, § 8; *Holdcraft v. Town of Brookfield*, 365 F. Supp. 3d 190, 198 (D. Mass. 2019) ("Chapter 40A provides an adequate post-deprivation remedy . . . ."). "The failure on plaintiff['s] part to allege the absence of adequate state court remedies is alone enough to require judgment for the defendant[] on the procedural due process claim." *Burnham v. City of Salem,* 101 F. Supp. 2d 26, 35 (D. Mass. 2000). Because Plaintiff had an adequate post-deprivation remedy, Cantell is entitled to judgment on Plaintiff's claim that Cantell violated his right to procedural due process.

        4.      Thompson did not violate Plaintiff's rights under either the Fourth Amendment or the Due Process Clause (Count IV)

        a.      *The Fourth Amendment*

Plaintiff claims that Thompson violated his Fourth Amendment rights when she drove on a private lane that he owned without his permission (Dkt. No. 38 at 8). The court agrees with

Defendants that Plaintiff has not shown that Thompson violated his Fourth Amendment right against unreasonable searches and seizures.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A constitutionally protected area is one in which a person has a subjective and an objectively reasonable expectation of privacy. *See, e.g., United States v. Jones*, 565 U.S. 400, 408 (2012); *United States v. Rheault*, 561 F.3d 55, 59 (1st Cir. 2009) ("The Supreme Court has set out a two-part test for analyzing the expectation question: first, whether the movant has exhibited an actual, subjective, expectation of privacy; and second, whether such subjective expectation is one that society is prepared to recognize as objectively reasonable.") (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). Fourth Amendment protection does not extend to areas that "are freely exposed to public view" where the owner has not taken steps to discourage public entry or observation. *United States v. Brown*, 510 F.3d 57, 65 (1st Cir. 2007) (holding that a private driveway was not part of the defendant's curtilage and protected by a reasonable expectation of privacy where the defendant had not taken steps to exclude members of the public from the driveway); *see also Commonwealth v. Dora*, 781 N.E.2d 62, 66 (Mass. App. Ct. 2003) (noting that it is well-established that an individual has a very limited expectation of privacy with respect to an area routinely used by others). "'[T]he ultimate touchstone of the Fourth Amendment is "reasonableness."'" *Heien v. N. Carolina*, 574 U.S. 54, 60 (2014) (quoting *Riley v. California*, 573 U.S. 373, 381 (2014)).

On May 26, 2020, while investigating a complaint in the vicinity of Plaintiff's property, Thompson observed Plaintiff's construction site from a road (Dkt. No. 37-1 at 4; Dkt. No. 38-1 at 10, 20-22, 25, 27). Contrary to Plaintiff's contention, the record evidence does not establish that

Thompson entered onto a private lane owned by him.  Thompson's testimony is confusing at best
(Dkt. No. 37-1 at 44, 47, 54; Dkt. No. 38-1 at 21-22).  She apparently testified that she had never
driven on the road (never clearly identified) to which Plaintiff was referring when he asked about
her location (Dkt. No. 38-1 at 21).  Ultimately, as Defendants contend, there is an absence of
evidence showing that Thompson entered onto Plaintiff's private property.

Even if she did so, however, Plaintiff has not shown a violation of his Fourth Amendment
rights that would entitle him to recovery under Section 1983.  Not all private property is
protected by the Fourth Amendment.  Plaintiff's home and his curtilage, meaning "'the area
"immediately surrounding and associated with the home,"'" *United States v. Rivera-Alejandro*,
Criminal No. 09-165 (CCC), 2014 WL 12922962, at *5 (D.P.R. Apr. 3, 2014) (quoting *Oliver v.
United States*, 466 U.S. 170, 180 (1984)), *adopted*, 2014 WL 12922963, at *1 (D.P.R. May 14,
2014), are entitled to Fourth Amendment protection.  In determining whether an area is beyond
the home and the curtilage, courts are directed to consider "'proximity of the area to the home,
whether the area is included within an enclosure surrounding the home, the nature of the uses to
which the area is put, and steps taken by the resident to protect the area from observation by
people passing by.'"  *Id.* (quoting *United States v. Dunn*, 480 U.S. 294, 304)).  Taking these
factors into account and considering Thompson's unchallenged testimony that rather than
directing Thompson to leave when he encountered her in late May 2020, Plaintiff invited her to
inspect the property (Dkt. No. 38 at 2; Dkt. No. 38-1 at 20), *compare Commonwealth v. John G.
Grant & Sons Co.,* 526 N.E.2d 768, 774-75 (Mass. 1988) (conservation commission member
told to leave by the property owner was not conducting a lawful search of the property), Plaintiff
has pointed to no evidence to establish that he exhibited a subjective expectation of privacy or
had an objectively reasonable expectation of privacy in any area entered by Thompson.

Moreover, there is no evidence that Thompson infringed on Plaintiff's constitutionally protected rights in late May 2020. Members of a conservation commission are not entitled to enter private property to gather evidence for purposes of establishing violations of the law. *See John G. Grant & Sons Co.,* 526 N.E.2d at 774-75 (Mass. Gen. Laws ch. 131, § 40 does not authorize conservation commission members to enter onto private property to inspect for violations of the law). Plaintiff has not disputed that, in late May 2020, Thompson declined Plaintiff's invitation to inspect his property, explaining that conservation commission members needed written permission to enter onto private property and could only act in concert (Dkt. No. 38-1 at 10). Plaintiff later granted the conservation commission members written permission to enter his property to inspect it (DSF ¶ 41), and it was only after this inspection that the conservation commission took any action related to the property (DSF ¶ 49). Plaintiff has pointed to no evidence tending to show that Thompson gathered any evidence during her visit to the vicinity of his property in late May in violation of his Fourth Amendment rights.

For all of the foregoing reasons, Plaintiff's Fourth Amendment claim fails.

      *b.*    *Procedural Due Process*

In arguing that Thompson violated his rights to procedural due process, Plaintiff has not distinguished between the commission's separate proceedings concerning his Request for Determination of Applicability (RDA) and the issuance of an enforcement order. The court addresses these separate proceedings in turn.

### Plaintiff's RDA

After Cantell issued the cease-and-desist order, Plaintiff submitted an RDA to the Conservation Commission. Plaintiff's RDA required the Conservation Commission to determine whether the construction of the shed would alter the buffer zone (Dkt. No. 37-1 at 9-12). *See*

*Sampson v. Town of Salisbury,* 441 F. Supp. 2d 271, 281 (D. Mass. 2006) (citing Mass. Gen.

Laws ch. 131, § 40); 310 C.M.R. § 10.05(3)(a).  The Conservation Commission was required to

give

> [n]otice of the time and place of the public meeting at which the [RDA]
> determination [would] be made . . . at the expense of the person making the
> request not less than five days prior to such meeting, by publication in a
> newspaper of general circulation in the city or town in which the land is located,
> and by mailing a notice to the person making the request, the owner, the board of
> health and the planning board of said city or town.

310 C.M.R. § 10.05(3)(b)(1).  There is no dispute that the Conservation Commission violated the

regulation by failing to give the required five-day notice of the hearing on Plaintiff's RDA in

advance of its July 23, 2020 meeting.  Plaintiff was not aware of the meeting and did not attend

(DSF ¶¶ 46, 47, 48).  According to the minutes of this meeting, however, the commission did not

act on Plaintiff's RDA on July 23, 2020 (Dkt. No. 37-1 at 23).  Because the commission did not

act on Plaintiff's RDA at the improperly noticed meeting, Plaintiff was not deprived of any

property interest without adequate process notwithstanding the lack of notice.  *See Licari,* 22

F.3d at 347.

### The Enforcement Order

At the same July 23, 2020 meeting, the Conservation Commission decided to issue an

enforcement order against Plaintiff based on the WPA violations the commissioners observed

during their July site visit (Dkt. No. 37-1 at 23).[4]  *See* Mass. Gen. Laws ch. 131, § 40.

---

[4] Plaintiff suggests that the Conservation Commission's actions at its July 23, 2020 meeting were
without force and effect because the commission violated the Open Meeting Law by failing to
approve the meeting's minutes "in a timely manner" (Dkt. No. 37 at 5, 6; Dkt. No. 38 at 6; Dkt.
No. 42 at 2).  Mass. Gen. Laws ch. 30A, § 22(c).  The minutes were approved by the commission
members via e-mail on August 27, 2020 (Dkt. No. 41-12).  Although the Open Meeting Law
provides detailed administrative procedures to redress alleged violations of the law, *see* Mass.
Gen. Laws ch. 30A, § 23, there is no indication in the record that Plaintiff challenged the

On the one hand, Plaintiff points to the absence of documentation of the commission's July 2020 site visit to suggest that the three commissioners did not visit the site (Dkt. No. 38 at 7).  On the other hand, he contends that the commissioners violated the Open Meeting Law by deliberating during a site visit that was not open to the public (Dkt. No. 42 at 1-2).  *See* Mass. Gen. Laws ch. 30A, §§ 18, 20(a).  In any event, Plaintiff has not raised a genuine issue of material fact concerning the commission's visit.  *See Morris v. Gov't Dev't Bank of P. R.,* 27 F.3d 746, 748 (1st Cir. 1994) (a party must produce "specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.").  On July 1, 2020, Plaintiff gave the commission written permission to conduct a site visit (Dkt. No. 41-10 at 2).  Plaintiff did not dispute Thompson's statement that, during the site visit, she observed a big stone pad in the area where plants had either been buried or removed and the absence of protection for the lake (DSF ¶¶ 41, 42).  *See* Fed. R. Civ. P. 56(e)(2).  In addition, Conservation Commission member Hugh Brower sent a July 7, 2020 e-mail message to Thompson and Robert Herbert, the third commission member, that included a link to his photographs of Plaintiff's property (Dkt. No. 42-3 at 14).  Plaintiff has not identified a basis in the record to dispute the fact of the commission's visit to the site.

Plaintiff argues that the Conservation Commission's enforcement order deprived him of procedural due process because Cantell's May 13, 2020 letter did not provide him with notice of all of the WPA violations that the Conservation Commission included in the enforcement order and he was not afforded an opportunity to be heard prior to the issuance of the order (Dkt. No. 37 at 5, 6; Dkt. No. 38 at 5, 7).  "[T]he failure to provide pre-deprivation processes does not violate

---

Conservation Commission's approval of the minutes or any of its other alleged Open Meeting Law violations under the law's procedure (Dkt. No. 38 at 6; Dkt. No. 42).

the Due Process Clause" as long as "post-deprivation processes were available to the plaintiff[]

to remedy the alleged constitutional violation." *Burnham*, 101 F. Supp. 2d at 34 (citations

omitted). *See Zinermon v. Burch,* 494 U.S. 113, 126 (1990) ("The constitutional violation

actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless

and until the State fails to provide due process.").

The conservation commission provided Plaintiff with notice of the enforcement order and

he had an opportunity to dispute the basis for the commission's order before the commissioners

ratified it. *See Lowe,* 959 F.2d at 340-41; *Burnham,* 101 F. Supp. 2d at 34.  Thompson had

authority to issue the enforcement order on August 3, 2020 based on the WPA violations without

first giving notice to Plaintiff (Dkt. No. 41-13).  *See* 310 C.M.R. § 10.08(1)(f), (3) (permitting

one commission member to issue an enforcement order immediately if the order is ratified at the

commission's next meeting).  There is no dispute that Plaintiff received the order by certified

mail on August 13, 2020 (DSF ¶ 55).  The enforcement order described the activity that Plaintiff

was conducting within the buffer zone in violation of the WPA and ordered Plaintiff to stop

work, restore the buffer zone to its original condition, install a silt fence and hay bales to avoid

further erosion within twenty-four hours of receiving the order, and file a restoration plan with

the commission (DSF ¶¶ 50, 51, 52; Dkt. No. 41-13).  The Conservation Commission's letter that

accompanied the enforcement order detailed the restoration plan and required Plaintiff to attend

the commission's next meeting on August 27, 2020, when the commission would vote on

ratification of the order (DSF ¶¶ 51, 52, 53; Dkt. No. 41-14).  *See* 310 C.M.R. § 10.08(3).

Plaintiff chose to request, and received, a stay of the full commission's vote on ratification

of the enforcement order.  He chose not to avail himself of the opportunity to seek relief from the

commission at its August 27th meeting and, for this reason, may not complain about the

Conservation Commission's failure to ratify, or not ratify, the order (DSF ¶ 57; Dkt. No. 38 at 5, 6; Dkt. No. 42-6 at 7-12).  Plaintiff chose to challenge the commission's enforcement order in the Superior Court through an action in the nature of certiorari (Dkt. No. 15-1).  *See* Mass. Gen. Laws ch. 249, § 4; *Friedman v. Conservation Comm'n of Edgartown*, 818 N.E.2d 208, 211 (Mass. App. Ct. 2004) ("our decisional law has established that an action in the nature of certiorari is the appropriate means of review by applicants dissatisfied with a local conservation commission's order, under a local wetlands by-law, that prevents or restricts building on the applicants' land.").  Plaintiff has not explained why the available post-deprivation remedies were inadequate, and, where he failed to seek relief from the Conservation Commission and he has asserted his rights in court, the record does not otherwise show that the remedies were inadequate.  Consequently, Thompson is entitled to summary judgment on Plaintiff's procedural due process claim.

        *c.*     *Substantive Due Process*

Although Plaintiff contends that Thompson was "dishonest and misleading throughout the process," Plaintiff fails to show that Thompson's decision to require his compliance with the WPA shocks the conscience (Dkt. No. 38 at 8).  *See Freeman v. Town of Hudson,* 714 F.3d 29, 40 (1st Cir. 2013) (conservation commission, which had the power to remedy environmental violations, did not violate the plaintiff's right to substantive due process even if the commission acted in bad faith) (citing cases)).

        4.     Cantell and Thompson did not conspire to deprive Plaintiff of his constitutional rights (Counts III and IV).

Finally, Plaintiff alleges that Cantell, Thompson, and the other members of the Conservation Commission conspired to deprive him of his due process rights in violation of 42 U.S.C. § 1983 (Dkt. No. 15-1 at ¶¶ 56, 57 (misnumbered)).   "[I]n order to 'present an adequate

conspiracy claim, there must be allegations of (1) an agreement between two or more state actors

. . . (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in

furtherance of that goal causing damages.'"  *Jellyman v. City of Worcester*, 354 F. Supp. 3d 95,

100 (D. Mass. 2019) (quoting *Williams v. City of Boston*, Civil Action No. 10-10131-PBS, 2013

WL 1336584, *11 (D. Mass. March 14, 2013)).  Because Plaintiff has not shown that Defendants

violated his right to due process, Defendants cannot be liable for conspiracy.  *See Nieves v.

McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001).

Accordingly, Cantell and Thompson are entitled to summary judgment on Counts III and

IV.

B.    Plaintiff's State Law Claims (Counts I and II)

"[I]n the usual case in which all federal-law claims area eliminated before trial, the

balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy,

convenience, fairness, and comity – will point towards declining to exercise jurisdiction over the

remaining state law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

"Additionally, the court may consider other relevant factors, including the presence of novel or

sensitive issues of state law."  *Sexual Minorities of Uganda v. Lively*, 899 F.3d 24, 35 (1st Cir.

2018).  Among other things, Plaintiff contends in his state law certiorari claim that the

Massachusetts statute that was the basis of the order issued by the Conservation Commission is

"unconstitutionally vague," surely a sensitive issue of state law (Dkt. No. 15-1 ¶ 30).  "Having

concluded that that Plaintiff['s] federal claims must be dismissed, I will decline to exercise

supplemental jurisdiction over [P]laintiff['s] remaining state law claims."  *Shwachman v. Town of

Hopedale*, 540 F. Supp. 3d 134, 140 (D. Mass. 2021) (citing *Roche v. John Hancock Mut. Life

Ins. Co.*, 81 F.3d 249, 256-57 (1st Cir. 1996)).

IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary or Partial Summary Judgment (Dkt. No. 37) is DENIED without prejudice, Defendants' Motion for Summary Judgment (Dkt. No. 34) is ALLOWED as to Counts III and IV and DENIED, without prejudice, as to Counts I and II.

It is so ordered.

Dated:  March 13, 2023                          /s/ Katherine A. Robertson
                                                KATHERINE A. ROBERTSON
                                                United States Magistrate Judge